UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
FRANK SCHWAMBORN,

               Plaintiff,                        MEMORANDUM AND ORDER
                                                   06-CV-3178 (ILG)

     -against-

UNITED STATES OF AMERICA,

               Defendant.
-----------------------------------------------x

GLASSER, United States District Judge:

     Petitioner Frank Schwamborn seeks an order, pursuant to 28 U.S.C. § 2255

("Section 2255"), vacating the sentence of 55 months' imprisonment that this Court

initially imposed on May 28, 2003, and affirmed on remand on June 22, 2005.[1]  Mr.

Schwamborn's principal argument in support of his petition is that his former attorney

ineffectively assisted him during plea negotiations and at sentencing by failing to inform

Mr. Schwamborn of a plea agreement offered by the government prior to the entry of

Mr. Schwamborn's guilty plea, and failing to request an evidentiary hearing for the

purpose of challenging the testimony that Mr. Schwamborn's co-conspirator David

Grossman gave at the trial of co-conspirator Robert Santoro, upon which this Court

relied in determining that a four-level enhancement should be applied to Mr.

Schwamborn's base offense level at sentencing due to his role as a leader or organizer in

the criminal enterprise to which he pleaded guilty.  During the pendency of this petition,

---

       [1]       Although Mr. Schwamborn's petition requests only that his sentence be
vacated, the Court gathers from his submissions and from the nature of the arguments
he raises that he also seeks to have his convictions in the underlying criminal action
vacated as well.

Mr. Schwamborn has filed several other motions seeking various forms of relief. By separate motions filed on October 24, 2006, Mr. Schwamborn seeks an order directing the Bureau of Prisons to return Mr. Schwamborn to the Nassau County Correctional Facility ("NCCF"), where he is currently incarcerated, rather than to a facility closer to this Court's location in Brooklyn, New York, if he is removed from the NCCF to appear for a hearing in this matter, and an order directing the Bureau of Prisons to grant him daily access to the NCCF's law library so that he may effectively represent himself in this pro se petition and any subsequent appeals.[2] Finally, Mr. Schwamborn has moved for leave to supplement his § 2255 petition on the basis of "newly discovered evidence" regarding a sealed hearing on Robert Santoro's renewed motion to sever his trial from that of Mr. Schwamborn, from which Mr. Schwamborn and his attorney were excluded. For the reasons stated below, all of Mr. Schwamborn's motions are denied.

## BACKGROUND

Frank Schwamborn was indicted and arrested in April 2001 on charges of racketeering, conspiracy to commit money laundering, and related counts, stemming from his participation in a money laundering scheme in which Schwamborn, co-defendants Santoro and Grossman, and other members of the Genovese crime family passed stolen checks through a check cashing service in Jersey City, New Jersey, known as City Check Cashing, which was managed by Santoro. The proceeds from the stolen

---

[2]     Mr. Schwamborn subsequently submitted an undated letter to the Court, received on December 18, 2006, in which he expands the scope of his motion to include a request that Joanne Schwamborn, Mr. Schwamborn's sister and a trained paralegal, and Eileen Echeverria, also a paralegal, be granted visitation rights to him in their capacity as legal professionals  so that they may assist with Mr. Schwamborn's legal representation.

checks were then deposited into bank accounts set up by Schwamborn, including some accounts owned by David Grossman, who had served as Mr. Schwamborn's attorney for several years. Mr. Schwamborn initially pleaded not guilty to the charges, and a joint trial for Schwamborn, Santoro, and Grossman was scheduled for November 4, 2002. During the pretrial proceedings, Mr. Schwamborn's defense attorney, Michael Washor, entered into negotiations with the government regarding a possible plea agreement. In October 2001, the government provided Mr. Washor with a draft plea agreement, marked "for discussion purposes only," which envisioned a plea to the money laundering charge, and was contingent upon Santoro and Grossman also pleading guilty. Mr. Schwamborn asserts this document was intended as a <u>bona fide</u> plea agreement offer, and that Mr. Washor failed to inform him of the existence of that offer at any time in which he could have accepted it. Mr. Washor, however, testified that he did discuss the draft agreement with Mr. Schwamborn, and both Mr. Washor and the government have stated that the draft plea agreement was never intended as a formal offer, but was created only to facilitate ongoing negotiations, and that, because the draft offer was, in any event, contingent upon a global plea that would include Mr. Schwamborn's co-defendants Santoro and Grossman, the government would have remained free to rescind any agreement with Mr. Schwamborn, because Mr. Santoro did not plead guilty, but was convicted at trial.

On October 11, 2002, approximately three weeks before the joint trial was to begin, David Grossman pleaded guilty to the indictment and agreed to testify at trial against Schwamborn and Santoro. Approximately two weeks later, on October 28, the Court held a sealed hearing on Mr. Santoro's motion to sever his trial from that of Mr.

Schwamborn, which it subsequently granted. Santoro's trial began on November 4, 2002; he was convicted on six of the nine counts against him by jury verdict on November 18. Grossman testified at Santoro's trial, and the government elicited substantial testimony from him regarding the degree of Schwamborn's participation in the money laundering scheme. During Santoro's trial, Mr. Schwamborn and the government entered into an agreement pursuant to which Mr. Schwamborn would plead guilty to the indictment, in exchange for which the government would not oppose a motion for a two-level reduction of Mr. Schwamborn's base offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. On Friday, November 15, three days before his trial was scheduled to begin, Mr. Schwamborn appeared before this Court and pleaded guilty to the indictment. The Court found a factual basis to exist for Mr. Schwamborn's guilty plea, and accepted that plea.

Schwamborn's sentencing was initially scheduled for February 26, 2003, but was subsequently adjourned to May 21, 2003. Two days before the sentencing hearing was to be held, Mr. Scwamborn, now represented by Flora Edwards, moved to withdraw his plea on the ground that Mr. Schwamborn was ineffectively assisted by his former counsel, Mr. Washor. The Court denied that motion, finding that Mr. Washor effectively represented Mr. Schwamborn, and that Mr. Schwamborn's guilty plea was both knowing and voluntary. At the subsequent sentencing hearing on May 28, 2003, Mr. Schwamborn was again represented by Mr. Washor, who objected, inter alia, to a four-level sentence enhancement pursuant to U.S.S.G. § 3B1.1 based on Mr. Schwamborn's role as an "organizer or leader" in the criminal enterprise. The Court based that enhancement primarily on Grossman's testimony during the Santoro trial regarding

Schwamborn's leadership capacity in the money laundering scheme; although Mr. Washor objected to the Court's reliance on that evidence, he declined the opportunity for an evidentiary hearing pursuant to <u>United States v. Fatico</u>, 579 F.2d 707 (2d Cir. 1978), to cross-examine Grossman on the issue of Schwamborn's leadership role and to offer rebuttal evidence on that point.  The Court then applied the 4-level enhancement, sentencing Mr. Schwamborn to 55 months' imprisonment to be followed by three years' supervised release.

Represented again by Ms. Edwards, Mr. Schwamborn appealed the Court's denial of his motion to withdraw his plea and his 55-month sentence, arguing, <u>inter alia</u>, that he was ineffectively assisted by Mr. Washor prior to pleading guilty, in part because Mr. Washor allegedly failed to convey the alleged plea offer to Mr. Schwamborn prior to his plea.  The Second Circuit affirmed this Court's rulings and sentence in an unpublished order dated January 23, 2004, and issued on February 24, 2005, <u>United States v. Schwamborn</u>, 87 Fed. Appx. 197 (2004), but in a separate order issued the same day, remanded the case to give this Court the opportunity to consider re-sentencing Mr. Schwamborn under the sentencing paradigm announced by the Supreme Court's then-recent opinion in <u>United States v. Booker</u>, 543 U.S. 220 (2005).  <u>United States v. Schwamborn</u>, 03-1370 (2d Cir. issued Feb. 24, 2005).  In an opinion dated June 22, 2005, this Court denied Mr. Schwamborn's request for resentencing, holding that the 55-month sentence it initially imposed was "eminently fair and reasonable."  <u>United States v. Schwamborn</u>, No. 01-CR-416 (E.D.N.Y. filed June 22, 2005).  On June 26, 2006, Mr. Schwamborn, acting <u>pro se</u>, filed the present § 2255 motion, in which he argues once again that he should be released because he received ineffective assistance

of counsel from Mr. Washor both prior to entering his plea and at his sentencing hearing.  Mr. Schwamborn has subsequently filed motions  to supplement his § 2255 petition and for various peripheral relief.  The Court shall address each motion in turn.

## DISCUSSION

**A.**    **Ineffective Assistance of Counsel**

As noted above, Mr. Schwamborn raises two ineffective assistance arguments with respect to Mr. Washor's representation of him in the underlying criminal action: first, he argues that Mr. Washor was ineffective in not conveying the government's plea agreement offer to Schwamborn prior to his guilty plea, and second, that Mr. Washor was ineffective in declining a <u>Fatico</u> hearing on the issue of Schwamborn's role in the criminal enterprise.  Both of Mr. Schwamborn's arguments are unavailing.

*1.    Schwamborn's Ineffective Assistance Claim Based on Counsel's Failure to Advise Him of a Possible Plea Agreement is Barred by the Law of the <u>Case</u>*

The government contends that Mr. Schwamborn's first ineffective assistance claim, which was considered and rejected by the Second Circuit on direct appeal, is barred from further consideration in this action by the law of the case doctrine.  The "mandate rule," which is "a branch of the law-of-the-case doctrine[,] . . . holds 'that where issues have been explicitly or implicitly decided on appeal, the district court is obliged, on remand, to follow the decision of the appellate court.'"  <u>Burrell v. United States</u>, 467 F.3d 160, 165 (2d Cir. 2006) (quoting <u>United States v. Minicone</u>, 994 F.2d 86, 89 (2d Cir. 1993)); <u>see also</u> <u>United States v. Tenzer</u>, 213 F.3d 34, 40 (2d Cir. 2000) ("'When an appellate court has once decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue.'")

(quoting <u>United States v. Cirami</u>, 563 F.2d 26, 32 (2d Cir. 1977)). The government relies primarily upon the Seventh Circuit's opinion in <u>Fuller v. United States</u>, 398 F.3d 644 (7th Cir. 2005), which held that where a plaintiff's claim of ineffective assistance of counsel during plea negotiations was rejected by the court on direct appeal, the defendant was barred by the law of the case doctrine from raising the issue again in a subsequent § 2255 motion.

In <u>Fuller</u>, the defendant pleaded guilty, pursuant to a plea agreement, to a single charge of making a false statement to a credit union for the purpose of influencing his application for an overdraft protection loan in violation of 18 U.S.C. § 1014, a Class B felony. 398 F.3d at 645-646. Prior to sentencing, he moved to withdraw his plea, on the ground that the prosecutor had allegedly promised him that he would receive probation upon pleading guilty to the offense, and his defense attorney had failed to inform Mr. Fuller that he would be ineligible for probation prior his accepting the plea agreement.[3] Mr. Fuller's counsel informed the district court that, before the plea agreement was executed, he had told Mr. Fuller that "I sort of doubt that you're eligible for probation." <u>Id.</u> at 646. The district court denied Fuller's motion to withdraw his plea, and sentenced him to 46 months' imprisonment. <u>See id.</u> at 646-647. On appeal, Fuller retained new counsel and argued to the Seventh Circuit that his former attorney had provided him with ineffective assistance on his motion to withdraw his guilty plea, because the attorney's interest in shielding himself from a malpractice action was in conflict with his

---

[3] Under section 5B1.1(b)(1) of the United States Sentencing Guidelines, which were mandatory at the time of Fuller's sentencing, "[a] sentence of probation may not be imposed in the event the offense of conviction is a Class A or B felony."

duty to represent Mr. Fuller's interests. The appellate court rejected that argument, "holding that Fuller failed to establish that his prior counsel had a conflict of interest that adversely affected his performance in arguing the motion." Id. at 647 (citing United States v. Fuller, 312 F.3d 287, 293 (7th Cir. 2002)). After the court of appeals affirmed his sentence and conviction, Fuller filed a motion to vacate his sentence pursuant to § 2255, "claiming once again that his trial counsel had a conflict of interest that caused him to render ineffective assistance at the hearing concerning the withdrawal of his guilty plea." Fuller, 398 F.3d at 647. The district court denied the motion, holding that Fuller's ineffective assistance claim was barred by the law of the case. On appeal, the Seventh Circuit affirmed the district court's denial of Fuller's motion to vacate his sentence, holding that "[i]n the context of § 2255 petitions, the 'law of the case' doctrine dictates that 'once this court has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a [court] asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it." Id. at 648 (quoting United States v. Mazak, 789 F.2d 580, 581 (7th Cir. 1986)).

Schwamborn responds to the government's argument that his ineffective assistance claim is barred by the law of the case doctrine only briefly, quoting the Supreme Court's admonition in Massaro v. United States, 538 U.S. 500, 504-505 (2003), that "[w]hen an ineffective assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose," and arguing that "petitioner bases his claim on the expanded record before this court post direct appeal and not solely on the record

available to the court of appeals."  Reply Mem. at 2.  Mr. Schwamborn's reliance on Massaro is misplaced; that case stands only for the proposition that a criminal defendant's "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."  538 U.S. at 509.  It does not mean that a defendant who raises an ineffective assistance claim on direct appeal is entitled to re-litigate the issue in a subsequent proceeding under § 2255.  As the Seventh Circuit noted in Fuller, "Massaro does not hold that ineffective assistance claims must be brought on collateral appeal, nor does it disturb the rule in this circuit that bars relitigation of ineffective-assistance claims that have been raised and addressed on direct appeal."  398 F.3d at 649 (emphasis in original).  The Supreme Court recognized in Massaro that "[w]e do not hold that ineffective-assistance claims must be reserved for collateral review," because "[t]here may be cases in which trial counsel's ineffectiveness is so apparent from the record that appellate counsel will consider it advisable to raise the issue on direct appeal." Massaro, 538 U.S. at 508.  Although the Court also noted that "certain questions may arise in subsequent proceedings under § 2255 concerning the conclusiveness of determinations made on the ineffective-assistance claims raised on direct appeal," this Court does not read Massaro to require that defendants be granted an opportunity to re-litigate ineffective assistance claims raised on direct appeal and rejected by the appellate court, particularly when the defendant represented to the appellate court that the record before it was sufficient to permit adequate review.  Id.  Thus, the Court holds that Mr. Schwamborn's first ineffective assistance claim, having been considered and rejected by the Second Circuit on direct appeal, is barred by the mandate rule from further

consideration in this § 2255 proceeding.

2.    *Schwamborn's Counsel was not Ineffective in Declining a* Fatico *Hearing*

Mr. Schwamborn did not raise his second ineffective assistance argument on appeal, and that argument is therefore not barred by the law of the case or by any procedural mechanism.  See Fuller, 398 F.3d at 649-650 (alternate ineffective assistance argument that defendant did not raise on appeal is not barred by law of the case); Massaro, 538 U.S. at 509 ("failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255.").  Mr. Schwamborn now argues that Mr. Washor was ineffective for declining this Court's invitation to hold an evidentiary hearing, pursuant to United States v. Fatico, 579 F.2d 707 (2d Cir. 1978), for the purpose of soliciting further evidence as to the allegations made by David Grossman during his testimony at the Santoro trial, upon which this Court relied in determining that Mr. Schwamborn was eligible for a four-point sentencing enhancement as an organizer or leader, pursuant to U.S.S.G. § 3B1.1(a).  He alleges that Mr. Washor declined the Fatico hearing because he believed it would require Mr. Schwamborn to waive the attorney-client privilege attached to his professional relationship with Mr. Grossman, and argues that, rather than declining the Court's invitation to hold a hearing,  Mr. Washor should have accepted the Court's invitation to hold a Fatico hearing while "request[ing] a limit of the scope of questioning regard[ing] issues not at bar."[4]  Schwamborn Mem. at 28.  Because

---

[4] As instructed by Sparman v. Edwards, 154 F.3d 51 (2d Cir. 1998), the Court sent a letter to Mr. Washor on June 30, 2006, advising him of Mr. Schwamborn's allegation that he provided ineffective assistance to Mr. Schwamborn in conjunction with Mr. Schwamborn's sentencing in the underlying criminal action, and inviting him to

it finds that Mr. Washor's decision to decline the <u>Fatico</u> hearing did not fall below an objective standard of reasonableness, the Court holds that Mr. Washor was not ineffective in this regard, and denies Mr. Schwamborn's motion to vacate his sentence on that basis.

Under the law as articulated by the United States Supreme Court and the Second Circuit, "in order to prevail on an ineffective-assistance-of-counsel claim, a defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice." <u>United States v. Jones</u>, 482 F.3d 60, 60 (2d Cir. 2006) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). When evaluating the objective reasonableness of defense counsel's actions, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance… [and] every effort [must] be made to eliminate the distorting effects of hindsight." <u>Strickland</u>, 466 U.S. at 689. An informed decision to pursue a litigation strategy, even if that strategy turns out badly for the defendant or seems unwise in retrospect, does not constitute ineffective assistance of counsel so long as it is a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." <u>Pavel v. Hollins</u>, 261 F.3d 210, 218 (2d Cir. 2001). Some authority exists for the proposition that the decision whether to request a <u>Fatico</u> hearing to challenge allegations of fact upon which the district court may rely to the defendant's detriment at sentencing is a matter committed to the discretion of the defense attorney, which cannot give rise to an ineffective assistance claim. <u>See, e.g.</u>,

---

respond to Mr. Schwamborn's allegations by July 21, 2006. Mr. Washor did not respond to the Court's letter.

Clymore v. United States, 164 F.3d 617, 1998 WL 681281, at *2 (2d Cir. February 5, 1998) (unpublished disposition) ("The failure to request a Fatico hearing... does not demonstrate that counsel's performance was inadequate."); Rosenberger v. United States, 133 Fed. Appx. 799, 801 (2d Cir. 2005) (defense counsel's decision to forego a Fatico hearing was a "strategic decision [which] falls within the range of reasonable professional assistance"); see also United States v. Lee, 818 F.2d 1052, 1056 (2d Cir. 1987) (district court's failure to conduct evidentiary hearing regarding proffered facts in support of sentence enhancement did not violate due process where defendant, "perhaps as a matter of strategy," repeatedly declined court's invitation to hold such a hearing). Even in the absence of such a broad rule, the Court is satisfied that Mr. Washor's decision to decline a Fatico hearing in Mr. Schwamborn's case was an objectively reasonable and informed decision intended to benefit Mr. Schwamborn. In Clymore, the court noted that

> [a]t a Fatico hearing, the government could have presented an enormous amount of damaging evidence regarding the seriousness and scope of Clymore's smuggling operation. . . . By avoiding a Fatico hearing, Clymore's counsel might reasonably have been trying to avoid highlighting this damaging evidence in Judge Platt's mind. Given the fact that Clymore's main rebuttal to this evidence would have been his own self-interested testimony, counsel reasonably could have concluded that Clymore would have been better off without a hearing.

1998 WL 681281, at *2. Likewise, in this case, the testimony given by Mr. Grossman at Mr. Santoro's trial was quite damaging to Mr. Schwamborn, and his attorney may have reasonably concluded that it was in Mr. Schwamborn's best interests to avoid giving the government an opportunity to elicit even more damaging testimony at a Fatico hearing. Mr. Schwamborn's suggestion that the Court could have issued an order limiting Mr.

Grossman's testimony at such a hearing so as to avoid impinging upon the attorney-client privilege is simply misguided. Assuming, arguendo, that Mr. Washor's decision was partially motivated by concerns about breaching the attorney-client privilege between Mr. Schwamborn and Mr. Grossman, that concern is a valid one that could not have been obviated by a limiting order. In order to effectively cross-examine Mr. Grossman regarding the facts and events underlying his testimony at the Santoro trial, Mr. Schwamborn would necessarily have had to elicit some testimony regarding privileged communications between himself and Mr. Grossman, thus opening the door to the government's further examination of Mr. Grossman about those events. The Court finds that Mr. Washor's decision to forego a Fatico hearing was objectively reasonable under the circumstances, and denies Mr. Schwamborn's § 2255 motion to vacate his sentence on the basis of ineffective assistance of counsel.

**B.**     **Motion to Supplement Petition and for Discovery**

On December 18, 2006, Mr. Schwamborn filed a Motion for Leave of the Court to File Supplement Based on Newly Discovered Evidence ("Motion to Supplement"), in which he seeks leave of the Court to amend his petition to allege violations of his Fifth, Sixth, and Fourteenth Amendment rights, and rights arising under Federal Rule of Criminal Procedure 43 ("Rule 43"). Mr. Schwamborn alleges that these violations occurred on October 28, 2002,[5] approximately two weeks before the joint trial of Schwamborn and Santoro was to commence, when the Court conducted a sealed hearing

---

[5]     The transcript of the severance hearing is dated October 28, 2003; this is clearly a scrivener's error, because the contents of the transcript, in addition to the recollection of the Court, make clear that the hearing was held before the joint trial of Schwamborn and Santoro was to begin in November 2002. Obviously, it would make no sense to move for severance a year later, after Santoro had been convicted at trial and Schwamborn had pleaded guilty.

regarding a renewed motion on behalf of Mr. Santoro to sever his trial from that of Mr. Schwamborn on the ground that Mr. Schwamborn had threatened physical violence against Mr. Santoro's attorney, Mr. Russo, should Mr. Russo employ a trial strategy of emphasizing Mr. Schwamborn's allegedly greater degree of culpability vis-a-vis Mr. Santoro for the acts perpetrated by the criminal enterprise in which both participated. These threats were reported to the government by Mr. Grossman shortly after he pleaded guilty and began cooperating. Mr. Schwamborn and his attorney were excluded from the severance hearing, and the Court granted the government's request to seal the transcript, which remained sealed until November 10, 2003, when the Court granted a request by Mr. Schwamborn's new attorney, Ms. Edwards, to unseal the transcript.

Mr. Schwamborn also argues that his due process rights were violated in the sealed hearing because the government and the Court "discussed and decided [] Schwamborn's bail status, which [AUSA] Weinstein asked of the Court to be revoked without the Defendant being afforded the opportunity to be heard on this matter." Petitioner's Response to Government's Response to Supplement Frank Schwamborn's Petition Filed Pursuant to Title 28 United States Code, Section 2255 ("Supp. Reply Mem.") at 2. The discussion of Mr. Schwamborn's bail status, which took place in the context of the conversation regarding Santoro's renewed motion to sever, proceeded as follows:

> [MR. WEINSTEIN]: The government opposes severance, as I told Mr. Russo and as he stated, of course it will be up to the Court. But if Frank Schwamborn were to get bail in the Long Island case, the government would move to revoke his bail in this case if that became necessary. We would immediately do that. It seems the most likely event will be that, at the trial, if there were to be a joint trial, a week from today, Frank Schwamborn would be in custody during the trial.

* * *

THE COURT: It might not be a bad idea to seek to revoke bail and lodge a warrant against Mr. Schwamborn in the event that there is some other determination made [in the Long Island case] regarding his detention status.

MR. WEINSTEIN: I will do that.

THE COURT: So he won't be released and a warrant would be lodged and he would be brought over here on the hearing to revoke his bail.

Severance Tr. at 8:8-15, 8:25-9:7.

The government argues that the Motion to Supplement must be denied because, even granting the dubious assertion that the sealed severance hearing violated any of Mr. Schwamborn's constitutional rights, Mr. Schwamborn's guilty plea waived any non-jurisdictional defects that occurred prior to that plea, and, in the alternative, that his failure to raise this issue on direct appeal constitutes a waiver of his right to raise the issue in this collateral proceeding.

1. *Timeliness of Motion*

Although it cannot resolve the motion on this basis, the Court notes that Mr. Schwamborn's Motion to Supplement, though purportedly based on "recently discovered evidence," is probably not timely under any calculation of the one-year period of limitations imposed by § 2255. The prescribed limitations period runs from, <u>inter alia</u>, "the date on which the judgment of conviction becomes final," or "the date on which facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." The Motion to Supplement, which is purportedly "based upon a recently discovered transcript" of the severance hearing, presumably is intended to invoke the latter measure, and to suggest that the timeliness of this motion

15

should be measured from the date of Mr. Schwamborn's "discovery" of the transcript of the Santoro severance hearing. Motion to Supplement at 1. Mr. Schwamborn does not disclose the precise date on which he discovered the Severance Transcript, but indicates that it was sometime after Flora Edwards terminated her representation of Mr. Schwamborn on July 13, 2006, and turned the files in her possession over to him.[6] However, the docket of the underlying criminal action indicates that the transcript of the Santoro hearing was unsealed pursuant to an order of this Court on November 12, 2003; thus, the claims presented in Mr. Schwamborn's Motion to Supplement could have been discovered with reasonable diligence as of that date.[7] Moreover, the Motion to Supplement appears to be untimely if measured from the date on which Mr. Schwamborn's conviction and sentence became final, as it was filed more than one year after the petitioner's time to appeal this Court's June 22, 2005, order denying Mr. Schwamborn's request for resentencing elapsed, and does not relate back to the initial petition because the issues presented in the Motion to Supplement do not "[arise] out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c); see also Ching v. United States, 298 F.3d 174 (2d Cir. 2002) (applying Rule 15 relation back doctrine to supplemental § 2255

---

[6]    Mr. Schwamborn's submissions do not identify the date upon which Ms. Edwards withdrew, but the docket for the Long Island Case, 06-CR-328 (SJF), indicates that Ms. Edwards was relieved as counsel on July 13, 2006. Pursuant to Federal Rule of Evidence 201, this Court may take judicial notice of the official acts of other courts in this District. Anderson v. Rochester-Genesee Regional Transp. Auth., 337 F.3d 201, 205 n. 4 (2d Cir. 2003) (citing cases); see also Vaughn v. Consumer Home Mortgage Co., Inc., 470 F. Supp. 2d 248, 256 n. 8 (E.D.N.Y. 2007) (Glasser, J.).

[7]    Mr. Schwamborn alleges that, upon moving this Court to unseal the Severance Transcript, "Ms. Edwards received a copy of the transcript with instructions not to disclose it to the Defendant." Id. The Court has no recollection of imposing any such condition upon Ms. Edwards, and notes that its November 12, 2003, Unsealing Order instructs that the Severance Transcript is to "be unsealed for all purposes." United States v. Schwamborn, No. 01-CR-416, Docket No. 1057 (E.D.N.Y. filed Nov. 12, 2003).

petition).

However, because the government failed to raise the issue of timeliness in its memorandum of law in opposition to Mr. Schwamborn's motion, this affirmative defense must be deemed waived pursuant to Federal Rule of Civil Procedure 8(c). See Kropelnicki v. Siegel, 290 F.3d 118, 130 n.7 ("The statute of limitations is an affirmative defense that is waived if not raised. As a result, we have held that a district court ordinarily should not raise a statute of limitations defense sua sponte.") (citations and quotation marks omitted); see also Metts v. Miller, 995 F. Supp 283, 291 n. 13 (E.D.N.Y. 1997) (Raggi, J.) (holding that the one-year period of limitations under § 2255 is an affirmative defense, rather than a jurisdictional limitation, and is therefore waived if not raised by the government). The Court must therefore proceed to examine the merits of the government's arguments in opposition to Mr. Schwamborn's Motion to Supplement.

### 2. *Waiver of Objection*

The government argues that Mr. Schwamborn has waived any objection he might have had to being excluded from the hearing on Santoro's severance motion "at least twice," by entering a plea of guilty after motion was granted and by failing to raise the issue on appeal. Government's Response to Frank Schwamborn's "Supplement" to His Petition Filed Pursuant to Title 28, United States Code, Section 2255 ("Gov. Supp.") at 7. Mr. Schwamborn opposes this argument principally on the ground that, because he allegedly did not receive a copy of the Severance Transcript from his attorneys until after both his guilty plea and his appeal, and therefore was not personally aware of its contents, neither his plea nor his appeal should be deemed a waiver of his right to object to the violation of his constitutional rights that allegedly occurred at the Severance

Hearing. Because Mr. Schwamborn's voluntary and intelligent guilty plea operates as a waiver of his right to challenge any constitutional defects in the underlying criminal action preceding his plea, the Court need not address the government's second argument.

Mr. Schwamborn's decision to appear in open Court and confess his guilt, under penalty of perjury, to the crimes charged in the indictment operates as a watershed event in the underlying criminal action, beyond which his right to object to constitutional errors in the proceeding prior to his guilty plea is significantly curtailed. "It is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction." Hayle v. United States, 815 F.2d 879, 881 (2d Cir. 1987) (citations omitted); see also United States v. Doyle, 348 F.2d 715, 718-719 (2d Cir. 1965) (Friendly, J.) ("An unqualified plea of guilty, legitimately obtained and still in force, bars further consideration of all but the most fundamental premises for the conviction, of which the subject-matter jurisdiction of the court is the familiar example."). The "jurisdictional" issues that remain cognizable after a guilty plea are limited to the determination of whether the indictment or information states a violation of federal law against the defendant. In Hayle, the Second Circuit recognized that

> [t]he requirement that the alleged jurisdictional defect be apparent from the face of the indictment reflects the line between issues that go to the court's power to entertain the prosecution and those that go merely to the government's ability to prove its case. If the indictment alleges all of the statutory elements of a federal offense and the defendant's contention is that in fact certain of those elements are lacking, the challenge goes to the merits of the prosecution, not to the jurisdiction of the court to entertain the case or

to punish the defendant.

815 F.2d at 882; see also LaManga v. United States, 646 F.2d 775, 778 (2d Cir. 1981)

("Since the indictment did not fail to charge an offense, by pleading guilty to it appellant

waived all of these non-jurisdictional defenses and cannot raise them now by collateral

attack.").

Mr. Schwamborn suggests that his guilty plea should not be deemed a waiver of

any objection he may have to his exclusion from the Santoro severance hearing because

he was not aware of the substance of that hearing until after he had entered his plea.[8]

Even assuming this to be the case, Mr. Schwamborn's argument fails because "conscious

waiver is [not] necessary with respect to each potential defense relinquished by a plea of

guilty." United States v. Broce, 488 U.S. 563, 573-574 (1989). Mr. Schwamborn's

argument is similar to, though substantially weaker than, the argument rejected by the

Supreme Court in Tollett v. Henderson, 411 U.S. 258 (1973). In Tollett, respondent

---

[8]    It is not entirely clear to what extent Mr. Schwamborn's argument rests on the assertion
that he personally, as opposed to his attorney, was unaware of the severance hearing. Even if the issue of
actual knowledge were relevant to the determination of whether Mr. Schwamborn's guilty plea
relinquished his right to object to any alleged constitutional defects in the proceedings prior to that plea,
any facts of which Mr. Schwamborn's attorney was aware could be imputed to Mr. Schwamborn himself.
It is axiomatic that "[a] person has notice of a fact if his agent has knowledge of the fact, reason to know it
or should know it, or has been given a notification of it, under circumstances coming within the rules
applying to the liability of a principal because of notice to his agent." Veal v. Geraci, 23 F.2d 722, 725 (2d
Cir. 1994) (quoting Restatement (Second) of Agency § 9(3) (1958)). In Veal, the Second Circuit affirmed
an order of this Court dismissing a claim under 42 U.S.C. § 1983 on statute of limitations grounds,
rejecting an argument by the plaintiff that the limitations period should be extended because he was not
personally aware of the testimony of NYPD Detective Geraci regarding the facts upon which the § 1983
claim was based until some time after he had been sentenced for the crime of which he was allegedly
wrongly convicted. The Second Circuit held that the issue of whether the appellant was personally aware
of Geraci's testimony before his sentencing was not dispositive of the point at which the limitations period
began to run, because "whether or not Veal himself heard Geraci's testimony, Veal's attorney plainly had
knowledge of the conduct giving rise to Veal's present claim, and under traditional principles of agency
attorney's knowledge must be imputed to Veal." Id. Likewise, even if it is the case, as he alleges, that Mr.
Schwamborn was not personally aware of the contents of the Severance Transcript until after Ms. Edwards
withdrew from representation of him on July 13, 2006, any knowledge that Mr. Washor or Ms. Edwards
may have had regarding the issues discussed during the severance hearing– an issue that is not clear from
the record– may be imputed to Mr. Schwamborn regardless of his actual knowledge of those facts.

Willie Lee Henderson, an African-American, was indicted for first-degree murder in connection with the robbery of a Nashville, Tennessee, liquor store in 1948, in which an employee was killed. At the time that Mr. Henderson was indicted, African-Americans were categorically excluded from grand jury service in Tennessee. Henderson subsequently pleaded guilty to first-degree murder pursuant to a plea agreement, and was sentenced to a term of incarceration of 99 years. Several years later, Henderson filed a habeas corpus petition in which he alleged that the exclusion of African-Americans from grand jury service in Tennessee at the time of his indictment violated his "Fourteenth Amendment right to be indicted by a constitutionally selected grand jury." Id. at 259-260. He further argued that his guilty plea did not constitute a knowing waiver of this constitutional defect, because neither Mr. Henderson nor his attorney were aware of the fact that African-Americans were excluded from grand jury service at the time the plea was entered. The district court granted Henderson's petition, ordering him to be released on the ground that the exclusion of African-Americans from the grand jury rendered his indictment unconstitutional, and the Court of Appeals for the Sixth Circuit affirmed.

The Supreme Court reversed the Sixth Circuit's decision, holding that Henderson's guilt plea "forecloses independent inquiry into the claim of discrimination in the selection of the grand jury," so as to preclude appellate review of the merits of any alleged constitutional defects in the proceedings antedating the plea. Id. at 266. In reaching this conclusion, the Court reaffirmed the principle articulated in several of its prior decisions that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter

raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Id. at 267. Thus, the Court determined that where a prisoner who has pleaded guilty pursuant to advice of counsel files a petition for habeas corpus relief asserting a constitutional error prior to the entry of his plea, "[t]he focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." Id. at 266. Accordingly, the inquiry is largely coextensive with an examination of the effectiveness of the petitioner's defense counsel. "Thus, while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief." Id.

Applying these principles, it is clear that Schwamborn's actual knowledge of the substance of the severance hearing is not relevant to the question whether his guilty plea operates as a waiver of objection to any constitutional defects that may have taken place in the underlying criminal proceeding prior to that plea, so long as the plea was knowing and voluntary. The constitutional defect alleged by Mr. Schwamborn is quite obviously not nearly so serious as that alleged by Mr. Henderson in Tollett, yet the Tollett Court recognized that "[a] guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge, no matter how peripheral to the normal focus of counsel's inquiry." Id. at 267; see also Broce, 488 U.S. at 573 ("Relinquishment derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses, but from the admissions necessarily made upon entry of a voluntary plea of guilty."). Thus, in order to state a claim for habeas relief on the basis of the

alleged violation of his Sixth Amendment rights presented in his Motion to Supplement, Mr. Schwamborn would have to argue that Mr. Washor's failure to inquire into the issues discussed in the Santoro severance hearing before advising Mr. Schwamborn to plead guilty "rendered that advice outside the range of competence demanded of attorneys in criminal cases," thereby undermining the knowing and voluntary nature of Mr. Schwamborn's guilty plea. <u>Tollett</u>, 411 U.S. at 268 (internal quotation marks omitted). Mr. Schwamborn has not made that argument in his Motion to Supplement, nor could he reasonably expect such an argument to prevail.

Mr. Schwamborn's argument that the Santoro severance hearing violated his constitutional rights, or his rights under Rule 43, clearly does not go to the sufficiency of the indictment or any other aspect of this Court's subject-matter jurisdiction over the underlying criminal action. He is therefore barred from pursuing that argument on appeal or by collateral attack on his conviction, and his Motion to Supplement must be denied as futile.[9]

## C. <u>Motions for Law Library Access</u>

Mr. Schwamborn has also filed motions seeking an order compelling the Nassau County Correctional Center to allow him greater access to that facility's law library, and to permit Joanne Schwamborn, the petitioner's sister, and Eileen Echeverria, both trained paralegals, to visit Mr. Schwamborn for the purpose of assisting in his legal defense, a privilege that the NCCC is alleged to have denied Ms. Schwamborn and Ms.

---

[9] In addition to the Motion to Supplement, Mr. Schwamborn has also submitted a "Motion for Discovery," filed December 18, 2006, seeking an order granting discovery regarding the issues raised in the Motion to Supplement. Because the Court denies the Motion to Supplement, the Motion for Discovery must <u>a fortiori</u> be denied as well.

Echeverria.  See Letter from Frank Schwamborn, filed on October 24, 2006, at 1;

Petitioner's Response to Government's Response to Supplement to Frank Schwamborn's

Petition Filed Pursuant to Title 28 United States Code, Section 2255, at 4-8 (section

titled "Affirmation in Response to Government's Fraudulent Affidavit") (emphasis in

original)).

      Mr. Schwamborn's allegations are obviously not cognizable under Section 2255,

which pertains only to claims by federal prisoners to be released from wrongful

detention, not to claims of constitutional deprivations while in federal custody.  Rather,

these claims are properly cognizable under 42 U.S.C. § 1983.  Although Mr.

Schwamborn's motion falls outside the scope of Section 2255, the Court initially

solicited, and received,  a response from the government as to the merits of Mr.

Schwamborn's allegations in an effort to avoid frustrating the potentially meritorious

claims of a pro se petitioner with needless legal formalism.  See, e.g., Erickson v. Pardus,

127 S. Ct. 2197, 2200 (2007) ("A document filed pro se is 'to be liberally construed. . . .'")

(quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  It has subsequently come to the

Court's attention, however, that Mr. Schwamborn has filed a separate action under

Section 1983 raising these issues, which is currently pending before Judge Feuerstein in

this District.  See Schwamborn v. County of Nassau, No. 06-CV-6528 (SJF) (ARL).  This

is not the first time that Mr. Schwamborn has attempted to take advantage of the Court's

leniency toward pro se petitioners by requesting duplicative relief from this Court and

from Judge Feuerstein.  See United States v. Schwamborn, 468 F. Supp. 2d 425

(E.D.N.Y. 2007) (prior order of this Court denying Schwamborn's motion to consolidate

his underlying criminal action in this case with a separate criminal proceeding before

Judge Feuerstein, which had previously been denied by Judge Feuerstein).  He is hereby advised that any such efforts in the future shall not be met with the same degree of forbearance that the Court has shown thus far.  Mr. Schwamborn's motions for law library access for himself and for Ms. Schwamborn and Ms. Echeverria are hereby denied, without prejudice to the § 1983 action pending before Judge Feuerstein.

D.    **Transportation to and from Court**

On October 24, 2006, Mr. Schwamborn filed a "Motion" ("October 24 Motion"), apparently seeking an order to the effect that, if the Court were to hold a hearing on the merits of his § 2255 petition, the "petitioner [shall] be transported to and from this Honorable Court back to Nassau County Correctional Center… in the course of the same day."  October 24 Motion at 1.  The October 24 Motion alleges that if he is not returned to the Nassau County Correctional Center on the same day, Mr. Schwamborn "will lose <u>four years</u> of legal work, notes, property and volumes of discovery" pertaining to various legal actions in which he is or has been involved.  <u>Id.</u> (emphasis in original).  While Mr. Schwamborn concedes that the failure to return him to the Nassau County Correctional Facility would "not [be] a legal violation of due process," he nevertheless argues that it would constitute an effort "to disrupt, destroy and truncate a defendant's continuity of defense, which hampers the due process right."  <u>Id.</u> at 2.  Mr. Schwamborn further requests that "in the event that petitioner's appearance becomes necessary. . . [that the court schedule] a 10 a.m. court date permitting the U.S. Marshals Service ample time to return petitioner to Nassau County Correctional Center the same day."  <u>Id.</u>

It is not clear what legal right Mr. Schwamborn believes he has to the requested relief, or what authority he believes this Court has to manage the administrative affairs

of the Bureau of Prisons. Moreover, because Mr. Schwamborn is no longer incarcerated at the Nassau County Correctional Center, but is now housed at a federal facility in Queens, New York, his request would appear moot. In any event, because this Court has determined that it need not hold a hearing in order to resolve the issues presented in Mr. Schwamborn's § 2255 petition, his October 24 Motion need not be addressed further.

## CONCLUSION

For the reasons stated above, Frank Schwamborn's § 2255 petition and all subsidiary motions for relief that Mr. Schwamborn has filed in this action are hereby DENIED.

SO ORDERED.

Dated:      June 20, 2007
            Brooklyn, New York

                                    _____/s/_____
                                    I. Leo Glasser
                                    United States District Judge

On this day, copies of the foregoing were mailed to:

<u>Counsel for the Plaintiff</u>

Frank Schwamborn, Plaintiff *pro se*
CC#0600 4605
LOC. E2E-21
100 Carmen Avenue
East Meadow, NY 11554-1146

<u>Counsel for the Defendant</u>

Paul Weinstein, Esq.
Assistant United States Attorney
147 Pierpont St.
Brooklyn, NY 11201
(Via ECF)