UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------x

FRANK SCHWAMBORN,

                     Plaintiff,                          MEMORANDUM AND ORDER
                                                    06-CV-3178 (ILG)
        -against-                              01-CR-416  (ILG)

UNITED STATES OF AMERICA,

                   Defendant.

-------------------------------------------------x

        Petitioner Frank Schwamborn seeks reconsideration of this Court's order, dated June 20, 2007, denying his petition pursuant to 28 U.S.C. § 2255 ("Section 2255") to vacate his criminal conviction and sentence in the underlying criminal action, United States v. Aparo et al., 01-CR-416 (E.D.N.Y.).  See Schwamborn v. United States, 492 F. Supp. 2d 155 (E.D.N.Y. 2007) ("June 20 Order"), and in the alternative for a certificate of appealability of that order.  Mr. Schwamborn argues that the June 20 Order failed to consider an argument raised in his petition– that he is actually innocent of the racketeering offenses of which he was convicted because one of the crimes involving check fraud (the "Delince check scheme") alleged in the Sixth Superseding Indictment ("Superseding Indictment" or "Sup. Ind.")[1] is not properly cognizable as a predicate act under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 et seq., because it was undertaken by Mr. Schwamborn for his own personal benefit and was not related to the racketeering enterprise identified in the Superseding Indictment.  Because Mr. Schwamborn is correct that this Court's June 20

---

        [1]        Because the Sixth Superseding Indictment was the one to which Mr. Schwamborn pleaded guilty, all references to the indictment are to that document rather than any earlier version.

Order inadvertently neglected to address that argument, his motion for reconsideration is granted to the extent necessary to address it now. However, to the extent that Mr. Schwamborn's motion for reconsideration attempts to re-cast the argument put forth in his initial § 2255 petition, which simply challenged the sufficiency of the Government's evidence regarding the Delince check scheme's relation to the RICO enterprise with which Mr. Schwamborn was associated, as a claim of ineffective assistance of counsel– specifically, that Mr. Schwamborn's former counsel, Michael Washor, ineffectively assisted Mr. Schwamborn by advising him to plead guilty to the racketeering offenses with which he was charged when Mr. Washor knew or should have known that the Delince check scheme was not a valid predicate act for purposes of RICO– that argument was not presented in his initial petition and is therefore barred as an unauthorized second or successive motion.

On reconsideration, the Court rejects Mr. Schwamborn's argument regarding the Delince check scheme and reaffirms its denial of the other claims for relief presented in his § 2255 petition. Mr. Schwamborn has procedurally defaulted on his argument that the Delince check scheme is not a cognizable predicate act by failing to raise that argument on direct appeal, and in any case, he waived his right to challenge the sufficiency of the Government's evidence by pleading guilty to the Superseding Indictment. His petition to vacate his conviction in the underlying criminal action is therefore denied.

## **BACKGROUND**

Familiarity with the facts of the case as stated in the June 20 Order and in the Court's written opinions in the underlying criminal action is herein presumed.

However, some additional detail regarding the nature of the offenses to which Mr. Schwamborn pleaded guilty and the procedural history of the underlying criminal action is necessary to place this motion in context.[2]

1. _Factual Allegations Underlying the Charges_

Frank Schwamborn was named along with 39 other associates of organized crime in an indictment that was unsealed on April 25, 2001.[3] The Sixth Superseding Indictment, which was filed on September 10, 2001, and to which Mr. Schwamborn ultimately pleaded guilty, alleged seven counts against Mr. Schwamborn, all of which related to his participation in a money laundering scheme with co-defendants David Grossman and Robert Santoro. This scheme involved obtaining stolen checks which would then be laundered through City Check Cashing in Jersey City, New Jersey, a check cashing business operated by Santoro. The proceeds from the stolen checks would then be transferred to various accounts, some of which were under the control of the defendants, and each co-conspirator would receive a share of the gains. Counts 1 and 2 of the Superseding Indictment are of particular importance to this motion. Count 1 alleged racketeering in violation of the Racketeering Influenced Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1962(c), against all of the defendants, and identified a total of twenty-one predicate racketeering acts, only two of which involved Mr.

---

[2] The facts stated below are drawn from the Superseding Indictment and from the Government's memorandum of law in opposition to Mr. Schwamborn's § 2255 petition. Mr. Schwamborn has not challenged any of the factual allegations underlying his conviction, but only raises the question of whether his participation in the Delince check scheme qualifies as a valid predicate act for purposes of the RICO counts to which he pleaded guilty.

[3] Mr. Schwamborn was alleged in the Superseding Indictment to be an associate of the Genovese family of La Cosa Nostra. Sup. Ind. ¶ 12. Other defendants named in the Superseding Indictment were alleged to be members of the Gambino, Luchese, and Bonanno families. Id. ¶¶ 16-20.

Schwamborn.[4]  Sup. Ind. ¶¶ 21-56.  Count 2 alleged racketeering conspiracy in violation

of RICO, 18 U.S.C. § 1962(d), and incorporated by reference the predicate acts identified

in Count 1.  Sup. Ind. ¶¶ 57-59.  The remaining counts asserted in the Superseding

Indictment against Mr. Schwamborn were essentially coextensive with the acts alleged

as RICO predicates:  conspiracy to commit mail and wire fraud (Count 24),[5] substantive

wire fraud (Count 25),[6] substantive mail fraud (Count 26),[7] money laundering (Count

27),[8] and interstate transportation of stolen property (Count 36).[9]

The first of the two predicate acts charged against Mr. Schwamborn is identified

in Count 1 of the Superseding Indictment as Racketeering Act 13 (hereinafter the

"Cascade Capital scheme"), and, as alleged in the Superseding Indictment, involved

elements of wire fraud, mail fraud, and money laundering.  Id. ¶¶ 40-44.  The Cascade

Capital scheme involved a conspiracy among Schwamborn, Salvatore and Vincent

Aparo, Peter DiChiara, and Robert Santoro to launder the proceeds of a $125,000 check

purportedly stolen from Cascade Capital International, which the defendants believed to

---

[4]      RICO defines a "pattern of racketeering activity," a necessary element for liability under 18 U.S.C. § 1962(c), as "requir[ing] at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years. . . after the commission of a prior act of racketeering activity."  18 U.S.C. § 1961(4).  "Racketeering activity" is defined as the violation of any one of a lengthy list of state or federal crimes, including, as relevant here, mail fraud, wire fraud, money laundering, and interstate transportation of stolen property.  18 U.S.C. § 1961(1).

[5]      Id. ¶¶ 103-105.

[6]      Id. ¶¶ 106-108.

[7]      Id. ¶¶ 109-111.

[8]      Id. ¶¶ 112-113.

[9]      Id. ¶¶ 137-138.

be an insurance company but which was in fact the front for an F.B.I. sting operation.[10] Genovese family associate Michael Durso, who at the time was working as a cooperating witness for the government, informed Santoro, Grossman, and Schwamborn that he had a contact inside Cascade Capital who could acquire a stolen check and, after being assured by the conspirators that they were capable of laundering the proceeds from such a check, arranged for a "stolen" check in the amount of $125,000 to be sent to Grossman, who deposited it into his bank account. When the check cleared, Grossman wired the proceeds to Santoro at City Check Cashing, who created false documents ascribing the funds to a transaction with a fictitious individual named "James Zimbler," and distributed the ill-gotten gains to the various co-conspirators, including $20,000 to Mr. Schwamborn.

The second predicate act alleged in Count 1– the Delince check scheme, identified as Racketeering Act 19 in the Superseding Indictment– lies at the heart of the portion of Mr. Schwamborn's § 2255 petition at issue here. See Sup. Ind. ¶ 53. In November 2000, a blank check was stolen– whether by Mr. Schwamborn or another person is not entirely clear from the Government's submissions– from the home of Brooklyn resident Maria Delince.[11] The check was subsequently written in the amount of $58,000 to "New York Energy Savers," which was Schwamborn's money laundering account, and cashed

---

[10] Curiously, although the Government alleges that Grossman was extensively involved in the Cascade Capital scheme in various memoranda of law, the Superseding Indictment does not name him as a co-conspirator in that scheme.

[11] The Government's memorandum in opposition to Mr. Schwamborn's § 2255 petition identifies Mrs. Delince's first name as both "Maria" and "Marie." See Government's Response to Frank Schwamborn's Petition Pursuant to Title 28, United States Code, Section 2255, at 5 (docket no. 6, filed July 21, 2006). Lacking any adequate means of discerning the truth of the matter, and the issue being entirely irrelevant to the outcome of this proceeding, the Court shall arbitrarily assume the former.

by Mr. Schwamborn at City Check Cashing, where Santoro again created fraudulent documents ascribing the transaction to the fictitious James Zimbler. In February 2001, Mrs. Delince discovered the theft and contacted the police, as a result of which Mr. Santoro, through City Check Cashing, was forced to repay the $58,000 to Mrs. Delince. This event caused a rift in the relationship between Santoro and Schwamborn when Santoro demanded to be reimbursed by Schwamborn for the loss he incurred as a result of Schwamborn's actions. After Vincent Aparo and Alan Longo, a captain in the Genovese family, became involved in the situation, Schwamborn eventually paid Santoro $58,600 to resolve the dispute.

2. _Post-Indictment Procedural History_

Shortly after Mr. Schwamborn was arrested, attorney Michael Washor entered a notice of appearance on his behalf, and continued to represent him throughout most of the proceedings in the underlying criminal action. The charges against Schwamborn, Santoro, and Grossman were eventually severed from the rest of the defendants, and their case was scheduled for trial in November 2002. During the pretrial phase of the proceedings, Mr. Washor engaged in plea negotiations with the Government which, as discussed more extensively in the June 20 Order, ultimately failed to come to fruition because the Government conditioned any agreement on a global plea that would include all three defendants, and Santoro refused to plead guilty to the charges. As Mr. Schwamborn acknowledged in his § 2255 petition,[12] one of the defenses that Schwamborn and Washor discussed from an early point in the proceedings was the argument that the Delince check scheme, having been undertaken by Mr. Schwamborn

_____

[12]     See Schwamborn § 2255 Pet. ¶¶ 8-9.

6

without the authorization of his Genovese family compatriots, and which ultimately caused a rift between him and his co-conspirators, was not "related" to the racketeering enterprise alleged in the Superseding Indictment– i.e., the Genovese crime family– and therefore was not cognizable as one of the two predicate acts necessary to establish that Mr. Schwamborn had participated in a "pattern of racketeering activity" as defined by 18 U.S.C. § 1961(4).[13] See Schwamborn § 2255 Pet. ¶¶ 8-9.

On October 11, 2002, Grossman pleaded guilty and began cooperating with the Government. Approximately two weeks later, Santoro moved to sever his trial from Schwamborn's, a motion which, for reasons discussed in the June 20 Order, was granted. See June 20 Order, 492 F. Supp. 2d at 158-59. Santoro's trial began on November 4, 2002, and Grossman testified extensively at that trial about Schwamborn's role as a leader or organizer in the money laundering conspiracy. Santoro was ultimately convicted by a jury on several counts on November 18. On November 15, the last business day before Schwamborn's trial was scheduled to commence, Mr. Washor met with AUSA Paul Weinstein, who informed Mr. Washor that although the Government would not offer Mr. Schwamborn a plea agreement, it would not oppose a motion for a two-level reduction of Schwamborn's base offense level under the United States Sentencing Guidelines for acceptance of responsibility, pursuant to U.S.S.G.

---

[13]     In order to establish a RICO violation, the government must prove, inter alia, that the alleged predicate acts were "related," i.e., that they shared "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and [were] not isolated events." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 240 (1989) (quoting 18 U.S.C. § 3575(e)). "The requirement of 'relatedness' embodies two different concepts. The racketeering acts must be related to each other ('horizontal' relatedness), and they must be related to the enterprise ('vertical' relatedness)." United States v. Minicone, 960 F.2d 1099, 1106 (2d Cir. 1992). Mr. Schwamborn's contemplated defense would have challenged the vertical relatedness between the Delince check scheme and the RICO enterprise.

§ 3E1.1, if he pleaded guilty to the Superseding Indictment that day. When Mr. Schwamborn arrived at the courthouse for a pretrial hearing, Mr. Washor met with him to convey the Government's offer. The § 2255 petition states that during that meeting, Mr. Schwamborn continued to question the validity of the Delince check scheme as a predicate act to the RICO counts, but Mr. Washor apparently did not believe that that defense would prevail at trial, and urged Mr. Schwamborn to accept the Government's offer. <u>See</u> Schwamborn § 2255 Pet. ¶ 19. Ultimately, Mr. Schwamborn accepted Mr. Washor's advice and pleaded guilty before this Court to the Superseding Indictment.

At Mr. Schwamborn's plea hearing, the Court engaged in an extended colloquy with Mr. Schwamborn for the purpose of discharging its duty pursuant to Federal Rule of Criminal Procedure 11(b)(3) to determine, prior to accepting a guilty plea, that a factual basis for that plea exists. Mr. Schwamborn's allocution established such a factual basis by acknowledging every element of the charged offenses, including the relatedness of the Delince check scheme to the racketeering enterprise alleged in the Superseding Indictment:

> [THE COURT:]     If you went to trial on the racketeering count, the first count, what the government would have to prove is, first, the existence of an enterprise. There are five elements that the government would have to prove, if a jury would be justified in finding you guilty of a charge of racketeering. They would have to find the existence of an enterprise. An "enterprise," roughly defined, is a group of people associated in fact for the purpose of accomplishing some common goal– in this case, for the purpose of making money for the persons who were associated with that enterprise– by a whole variety of criminal activity.
>     The enterprise also has to have some ongoing structure, whether it's formal or informal, boss, underboss, other persons who are in a chain of command or organization, and it also has to have personnel to function as a continuing unit.
>     Given all of that, Mr. Schwamborn, was there an enterprise, as I defined that term to you, [a] group of people who were associated with,

who in fact had a common goal of making money for its members by the commission of a whole variety of criminal activity?

    [MR. SCHWAMBORN:]    Yes.

    Q.    That entity had a formal or an informal structure, had personnel that functioned as a continuing unit?

    A.    That's correct, your Honor.

    Q.    And you knowingly, intentionally associated with that enterprise?

    A.    Yes, your Honor.

    Q.    And you participated in the conduct of the affairs of that enterprise, you performed acts which were necessary, helpful to the operation of that enterprise?

    A.    Yes, your Honor.

    Q.    And you did that through a pattern of racketeering activity, meaning that you committed the crime of wire fraud or mail fraud or money laundering--

    A.    Yes, Judge.

    Q.    – through Racketeering Acts?

    A.    Yes.

    Q.    A Racketeering Act, Mr. Schwamborn, may consist of any one of a whole list of crimes which are set out in Section 1961 of Title 18 of the United States Code.  And Racketeering Acts, as they are defined in that section, include mail fraud, wire fraud, money laundering, interstate transportation of stolen property– and this activity that you were engaged in affected interstate commerce, across state lines?

    A.    Yes, your Honor.

    Q.    And this pattern of racketeering activity had some relationship to this enterprise that you were a member of; in other words, the mail fraud, the wire fraud, the money laundering, the interstate transportation of stolen property, was connected with the affairs of the enterprise, was related to it?

    A.    Yes, your Honor.

    Q.    And, of course, this racketeering activity had a threat of a continuing and ongoing series of Racketeering Acts; is that right?

    A.    That's correct.

United States v. Schwamborn, 01-CR-416, Sentencing Tr. 19-21 (November 15, 2002).

Having determined on the basis of Mr. Schwamborn's statements that a factual basis existed for his guilty plea, the Court accepted that plea.

Schwamborn's sentencing was initially scheduled for February 26, 2003, but was subsequently adjourned to May 21, 2003.  Two days before the sentencing hearing was

to be held, Mr. Schwamborn, now represented by Flora Edwards, moved to withdraw his plea on the ground that Mr. Washor had ineffectively assisted him prior to and during the plea hearing and that his plea was therefore not knowing and voluntary.  In support of that motion, Mr. Washor submitted an affidavit in which he stated that he told Mr. Schwamborn during their meeting in the courthouse before the plea hearing that "we really had no option but to take the plea and that at least he would get the two points," and that he "was simply overwhelmed by the circumstances" and unable to provide adequate assistance to Mr. Schwamborn during the meeting.  United States v. Schwamborn, 01-CR-416, Memorandum & Order Denying Motion to Withdraw Plea at 4 (docket no. 1018) (E.D.N.Y. issued May 23, 2003) (quoting affidavit of Michael Washor).  Skeptical of the literal accuracy of Mr. Washor's account, the Court suggested that live testimony be elicited from him by Ms. Edwards during the hearing on Schwamborn's motion to withdraw his plea.  During that testimony, Mr. Washor clarified that he told Mr. Schwamborn prior to the plea hearing that "the bottom line [was] that we would not have a plea agreement and that he had no choice.  Either he takes the plea to the entire indictment and gets the two points, or alternatively, he goes to trial.  But those– that's it.  No other options."  Id. at 6.  On the basis of this elaboration, the Court found that Mr. Washor had not literally informed Mr. Schwamborn that he had no option but to plead guilty to the Superseding Indictment, and concluded that Mr. Schwamborn's guilty plea was knowing and voluntary.  The Court therefore denied Mr. Schwamborn's motion to withdraw his plea, and subsequently sentenced Mr. Schwamborn to 55 months' imprisonment.

Mr. Schwamborn appealed his conviction and sentence to the Second Circuit, challenging this Court's denial of his motion to withdraw his plea and its calculation of his Guidelines range. As discussed at greater length below, the record of Mr. Schwamborn's appeal reveals that he did not raise on appeal the argument that he was wrongfully convicted on the RICO counts because the Delince check scheme was not a cognizable RICO act, which he now seeks to present to this Court. The Second Circuit affirmed this Court's decision in its entirety, holding that Mr. Schwamborn did not receive ineffective assistance and that his guilty plea was knowing and voluntary. United States v. Schwamborn, 87 Fed. Appx. 197 (2d Cir. 2004). The appellate court did, however, remand the case to this Court for the purpose of considering whether to resentence Mr. Schwamborn pursuant to the Supreme Court's then-recent decision in United States v. Booker, 543 U.S. 220 (2005).[14] In an opinion dated June 22, 2005, this Court denied Mr. Schwamborn's request for resentencing, holding that the sentence it initially imposed was "eminently fair and reasonable." United States v. Schwamborn, No. 01-CR-416 (E.D.N.Y. filed June 22, 2005).

Mr. Schwamborn subsequently filed a petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, in which he presented three purported constitutional defects in the underlying criminal proceeding that he argued warranted such extraordinary relief: first, that he was not guilty of violating RICO because the Delince check scheme lacked vertical relatedness to the charged racketeering enterprise,

---

[14] The Second Circuit's decision in Schwamborn was dated January 23, 2004, but was issued on February 24, 2005, shortly after the Supreme Court's decision in Booker on January 12, 2005. The order remanding the case to this Court to consider resentencing was issued separately on the same day.

and therefore was not a legally cognizable predicate act for RICO purposes; second, that

Mr. Washor provided ineffective assistance by failing to notify Mr. Schwamborn of a

plea agreement offer at a time within which Mr. Schwamborn could have accepted it;

and third, that Mr. Washor was ineffective in failing to request an evidentiary hearing,

pursuant to United States v. Fatico, 579 F.2d 707 (2d Cir. 1978), for the purpose of

challenging Mr. Grossman's characterization of Schwamborn's role in the money

laundering conspiracy in his testimony at the Santoro trial. The Court rejected the

second and third arguments in its June 20 Order, and because Mr. Schwamborn does

not seek reconsideration of the Court's rulings on those arguments, it need not revisit

them here. The June 20 Order neglected, however, to address the first argument. On

July 9, 2007, Mr. Schwamborn filed the motion to reconsider the June 20 Order that is

presently before the Court, in which he pointed out that the previous order failed to

address his argument regarding the Delince check scheme's alleged lack of vertical

relatedness to the Genovese crime family and argued that the Court should reconsider

the June 20 Order so as to address that issue.

## DISCUSSION

1.    *Standard of Review*

      a.    Authority for Reconsideration of the June 20 Order

Mr. Schwamborn's letter motion does not cite a specific Federal Rule of Civil

Procedure as authority for his motion for reconsideration; however, on the basis of the

Second Circuit's decision in United States v. Clark, 984 F.3d 31 (2d Cir. 1993), the Court

will treat Schwamborn's motion as one for relief under Federal Rule of Civil Procedure

60(b) ("Rule 60(b)"). In Clark, the Second Circuit held that, because Rule 11 of the

Rules Governing Section 2255 Proceedings for the United States District Courts ("Rule 11") incorporates Federal Rule of Appellate Procedure 4(a) ("Rule 4(a)") in determining the amount of time available to appeal a ruling on a § 2255 petition, it implicitly adopts the provisions of Rule 4(a)(4) regarding the effect of the "ten-day motions" under Federal Rules of Civil Procedure 50(b), 52(b), and 59, and therefore "implies" that an order denying a § 2255 petition is subject to a motion for reconsideration under those rules.[15]  984 F.2d at 33.  The court further noted that "case law construing Rule 4(a)(4) has determined that motions filed after the 10-day period, no matter how styled, are to be treated as Rule 60(b) motions," thereby "impl[ying]" that motions to reconsider a § 2255 order made more than 10 days after the order has been issued are likewise to be

---

[15]     The version of Rule 11 in effect when <u>Clark</u> was decided stated that the time for appealing a determination of a Section 2255 motion "is as provided in Rule 4(a)."  <u>Clark</u>, 984 F.2d at 33 (quoting 1992 version of Rule 11).  Rule 11 was subsequently revised in 2004; the version in effect today states in its entirety that "Federal Rule of Appellate Procedure 4(a) governs the time to appeal an order entered under these rules.  These rules do not extend the time to appeal the original judgment of conviction."  Although the version of Rule 11 presently in effect lacks the "as provided" language that <u>Clark</u> and other courts relied upon in support of the conclusion that rulings on § 2255 petitions are subject to motions to reconsider under Rules 59(e) and 60(b), the Advisory Committee Notes to the 2004 Amendments to Rule 11 state that the rule was revised pursuant to a "general restyling of the rules to make them more easily understood and to make style and terminology consistent throughout the rules," adding that "no substantive change is intended."  The Court therefore concludes, although the Second Circuit has not yet addressed the point, that the Second Circuit's interpretation of Rule 11 in <u>Clark</u> applies with equal force to the version of Rule 11 in effect today.  <u>See, e.g.</u>, <u>Aboushi v. United States</u>, No. 05-CV-1244, 2007 WL 776812, at *1 (E.D.N.Y. March 13, 2007) (applying <u>Clark</u> to motion to reconsider § 2255 decision issued after 2004).

The Court further notes that Rule 4(a)(4) has also been revised since <u>Clark</u> was decided; however, the version of Rule 4(a)(4) currently in effect continues to recognize the applicability of motions under Rules 50, 52, and 59, and therefore the Court finds nothing in the revised rule to undermine the Second Circuit's holding in <u>Clark</u>.  Incidentally, the Court notes that the current version of Rule 4(a)(4) permits tolling the period within which to file an appeal on the basis of a Rule 60 motion only "if the motion is filed no later than 10 days after the judgment is entered."  <u>See</u> <u>Dudley ex rel. Estate of Patton v. Penn-America Ins. Co.</u>, 313 F.3d 662 (2d Cir. 2002).  Because Mr. Schwamborn's motion for reconsideration was filed more than 10 days after the June 20 Order, Rule 4's tolling provision would apparently not apply to this case.  <u>See</u> <u>Cody, Inc. v. Town of Woodbury</u>, 179 F.3d 52, 56 (2d Cir. 1999) ("[I]f a motion under Rule 60 is filed within ten days of the entry of judgment, the thirty day period is tolled until the Rule 60 question is adjudicated. . . .  But if such a motion is filed more than ten days from the date of judgment, the clock does not stop.") (citing <u>Branum v. Clark</u>, 927 F.2d 698, 704 (2d Cir.1991)).

construed as Rule 60(b) motions.  Id. (citing Browder v. Director, Dep't of Corrections of Illinois, 434 U.S. 257, 263 n. 7 (1978); Branum, 927 F.2d at 704).  In light of these considerations, the Clark court concluded that district court orders denying a § 2255 petition are subject to reconsideration pursuant to any of the ten-day motions identified in Rule 4(a)(4), and that, when such a motion is filed after the requisite ten-day period, it must be deemed a motion for relief under Rule 60(b).  The court further held that, although the Northern District of New York enforced a local rule that purported to require all motions for reconsideration to be filed within ten days,  the district's local rule could not preclude as untimely a motion for reconsideration permitted by Rule 60(b) because Federal Rule of Civil Procedure 83 ("Rule 83") permits federal district courts to adopt and enforce local rules only to the extent "not inconsistent with" the Federal Rules of Civil Procedure; thus, "the local rule could [not] have the effect of precluding the permissible use of Rule 60(b)."[16]  Id. at 34 (quoting Fed. R. Civ. P. 83 (1992)).[17]

Under the Second Circuit's holding in Clark, Mr. Schwamborn's motion to reconsider the June 20 Order would have been cognizable under Rule 59(e) had it been

---

[16]    Like the local rule at issue in Clark, Rule 6.3 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York states that "[a] notice of motion for reconsideration or reargument of a court order determining a motion shall be served within ten (10) days after the entry of the court's determination of the original motion, or in the case of a court order resulting in a judgment, within ten (10) days after the entry of the judgment."  The Court interprets Clark to preclude the application of Local Civil Rule 6.3 in such a manner as to prevent Mr. Schwamborn's motion from being construed as a Rule 60(b) motion.

[17]    Rule 83 was revised in 1995.  The version presently in effect contains slightly different wording, stating that "[a] local rule shall be consistent with. . . Acts of Congress and rules adopted under 28 U.S.C. §§ 2072 and 2075. . . ."  This Court does not read the revised language to alter the meaning of Rule 83 as it was interpreted in Clark.

14

submitted within ten days of the date that order was issued– i.e., by July 5, 2007.[18]

However, Rule 59(e) imposes a strict ten-day period within which motions under that

Rule must be filed, and Federal Rule of Civil Procedure 6(b) ("Rule 6(b)") makes clear

that this Court lacks authority to enlarge that period for any reason. See Rule 6(b)

("[The court] may not extend the time for taking any action under Rules 50(b) and

(c)(2), 52(b), 59(b), (d), and (e), and 60(b), except to the extent and under the

conditions stated in them."); see also Feldberg v. Quechee Lakes Corp., 463 F.3d 195,

197 (2d Cir. 2006) (per curiam) ("[U]nder Rule 6(b), courts may not extend the time for

taking any action under Rule 59(e)."); Rodick v. City of Schenectady, 1 F.3d 1341, 1346

(2d Cir. 1993) ("Rule 6(b) also denies to district courts the power to enlarge the ten-day

limit under [Rule 50(b) or 59(e)]."). The Court will therefore construe Mr.

Schwamborn's motion as one for relief pursuant to Rule 60(b).

      b.    Availability of Rule 60(b) Review of the June 20 Order

Having determined that Mr. Schwamborn's motion for reconsideration must be

construed as a motion pursuant to Rule 60(b), the Court must now consider whether,

and to what extent, the motion is precluded by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), which limited the scope of Rule 60(b) as it applies to

motions for relief from orders denying habeas corpus petitions. In Gonzalez v. Crosby,

545 U.S. 524 (2005), the Supreme Court determined that a Rule 60(b) motion that seeks

to raise substantive challenges to the underlying criminal proceeding that were not

---

[18]    Pursuant to Federal Rule of Civil Procedure 6, "[w]hen the period of time prescribed or allowed [for filing a paper] is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Excluding intermediate Saturdays, Sundays, and the Independence Day holiday, the ten-day period for filing a Rule 59(e) motion elapsed on July 5.

presented to the district court in the original § 2255 petition violates the AEDPA's ban

on "second or successive" petitions, holding that "[u]sing Rule 60(b) to present new

claims for relief from a state court's judgment of conviction– even claims couched in the

language of a true Rule 60(b) motion– circumvents AEDPA's requirement that a new

claim be dismissed unless it relies on either a new rule of constitutional law or newly

discovered facts." (citing 28 U.S.C. § 2244(b)(2)). Gonzalez addressed the issue in the

context of a Rule 60(b)(6) motion to reconsider an order denying a petition for relief

from a state court conviction under 28 U.S.C. § 2254, and expressly noted that "we limit

our consideration to § 2254 cases" because "[a]lthough that portion of § 2255 [imposing

a ban on unauthorized second or successive motions of federal prisoners] is similar to,

and refers to, the statutory subsection applicable to second or successive § 2254

petitions, it is not identical," 545 U.S. at 529 n. 3. Neither the Supreme Court nor the

Second Circuit have directly addressed the extent to which Gonzalez's reasoning

supports the inference that a Rule 60(b) motion that raises issues not presented to the

district court in the initial § 2255 petition constitutes an unauthorized second or

successive motion, but district courts in this circuit have reached divergent conclusions

on that question. Compare Hammie v. United States, No. 01-CV-960, 98-CR-130, 2005

WL 3543768, at *1 n. 4 (D. Conn. December 20, 2005) ("Though Gonzales [sic] decided

the issue only for cases under 28 U.S.C. § 2254, its holding and rationale appear to apply

equally to cases under § 2255.") with Parke v. United States, No. 97-CV-526, 92-CR-035,

2006 WL 3051775, at *3 (N.D.N.Y. October 20, 2006) ("[T]he court concurs with the

government's assertion that Parke's reliance on Gonzalez is misplaced" because

Gonzalez limited its holding to Rule 60(b) motions seeking reconsideration of district

court orders denying § 2254 petitions).  Both the weight of district court authority in the Second Circuit[19] as well as this Court's own reading of <u>Gonzalez</u> and the statutes at issue support the conclusion that <u>Gonzalez</u>'s reasoning applies with equal force to Rule 60(b) motions seeking reconsideration of § 2255 petitions.  Although <u>Gonzalez</u> pointed out that the provisions regarding second or successive motions under § 2254 and § 2255 are not identical, neither <u>Gonzalez</u> nor <u>Parke</u> pointed to any specific differences between those sections that would suggest that a Rule 60(b) motion raising a new ground for relief should be treated differently in the § 2255 context.  Rather, this Court reads Justice Scalia's caveat in the <u>Gonzalez</u> majority opinion simply as an exercise in judicial restraint, restricting the Court's decision to the precise issue presented in that case, but providing no support for <u>Parke</u>'s assumption that the same analysis does not apply in the § 2255 context.

To the extent that Mr. Schwamborn's Rule 60(b) motion simply seeks reconsideration of the June 20 Order on the ground that this Court failed to address the argument regarding the Delince check scheme that was raised in his initial § 2255 petition, that aspect of the motion "challenges only the District Court's failure to reach the merits" of an argument that was properly before it and therefore does not constitute

---

[19]     <u>See, e.g.</u>, <u>Arroyo v. United States</u>, 01-CV-7165, 93-CR-0291, 2007 WL 1180549, at *2 n. 3 (S.D.N.Y. April 23, 2007) (Applying <u>Gonzalez</u> to Rule 60(b) motion in Section 2255 context, noting that "[a]lthough <u>Gonzalez</u> specifically addressed Section 2254 proceedings, courts have found it instructive in the Section 2255 context as well.") (citation omitted); <u>Yuk Chun Kwong v. United States</u>, No. 01-CV-4307, 2006 WL 467956, at *3 (E.D.N.Y. February 27, 2006); <u>Panton v. United States</u>, 89-CR-346, 98-CV-1881, 2005 WL 3078224, at *3 n. 2 (S.D.N.Y. November 16, 2005); <u>Fulton v. United States</u>, No. 02-CV-1541, 2006 WL 3063451, at *1 (E.D.N.Y. October 6, 2006) ("[A] motion under Rule 60(b) for relief from judgment on a [§ 2255] habeas petition will be considered a second or successive petition where it seeks to add a new ground for relief. . . .") (citing <u>Gonzalez</u>).  The only opinion within the Second Circuit of which this Court is aware that has taken the position that <u>Gonzalez</u>'s holding does not apply with equal force to Rule 60(b) motions seeking reconsideration of § 2255 petitions is <u>Parke</u>.

17

a second or successive petition. <u>Gonzalez</u>, 545 U.S. at 538. However, to the extent that

Mr. Schwamborn's Rule 60(b) motion attempts to re-cast the claim presented in the

original petition as one of ineffective assistance of counsel, that recharacterization

constitutes a second or successive § 2255 petition because, although it was raised in the

underlying criminal action at the hearing on Mr. Schwamborn's motion to withdraw his

guilty plea and on direct appeal, it was not presented to the Court in Mr. Schwamborn's

initial § 2255 petition. Mr. Schwamborn's petition clearly presented the Delince check

issue as a claim of actual innocence, based on his argument that the Delince check was

not "related" to the criminal enterprise with which he was associated, and therefore

could not constitute a predicate act under RICO, rather than as a claim of ineffective

assistance of counsel.[20] Perhaps taking a cue from the Court's observation in the June

20 Order that "where a prisoner who has pleaded guilty pursuant to advice of counsel

files a petition for habeas corpus relief asserting a constitutional error prior to the entry

of his plea, '[t]he focus of federal habeas inquiry is the nature of the advice and the

voluntariness of the plea, not the existence as such of an antecedent constitutional

infirmity,'" and as such is "'largely coextensive with an examination of the effectiveness

of the petitioner's defense counsel,'" 492 F. Supp. 2d at 168 (quoting <u>Tollett v.</u>

<u>Henderson</u>, 411 U.S. 258, 266 (1973)), Mr. Schwamborn argues in his Rule 60(b) motion

---

[20] The headings of the three claims presented in Mr. Schwamborn's § 2255 petition make clear that the Delince check issue was not intended as an ineffective assistance argument. The first claim, in which Mr. Schwamborn presents his argument regarding the Delince check, is headed "Petitioner has a Legitimate Claim of Actual Innocence Within the Law." Schwamborn § 2255 Pet. at 21. The second claim is headed "Mr. Washor was In-Effective [sic] the Moment he Failed to Forward the Plea Agreement to Frank Schwamborn," <u>id.</u> at 22, while the third is headed "Mr. Washors [sic] Failure to Ask the Court for a Limited Scope of Questioning was also Ineffective Assistance." Thus, it is clear from the face of Mr. Schwamborn's § 2255 petition that Delince check scheme argument was not intended as a claim of ineffective assistance.

18

that "[his] guilty plea should be vacated because [his] lawyer failed to advise [him] that the evidence of [his] guilt as to the RICO charge was insufficient as a matter of law." Rule 60(b) Motion at 1.[21] This argument was not raised in his initial petition and it alleges a new constitutional defect in the underlying criminal action. Therefore, under Gonzalez, this argument constitutes a second or successive § 2255 petition and must be treated accordingly.

As a general matter, when a petitioner makes a second or successive § 2255 motion without authorization from the appellate court, the district court may transfer the motion to the appropriate appellate court for the purpose of seeking authorization "if it is in the interest of justice to do so." 28 U.S.C. § 1631. The Court declines to do so in this case, because Mr. Schwamborn's ineffective assistance argument based on Mr. Washor's failure to advise him not to plead guilty to the RICO charges is wholly frivolous and is undermined by the facts as recounted in Mr. Schwamborn's own § 2255 petition, which clearly states that Mr. Washor did inform Mr. Schwamborn, prior to his pleading guilty, that the relatedness issue might be a weak point in the prosecution's case, but that Mr. Washor ultimately advised Mr. Schwamborn to plead guilty because he believed, plausibly, that the argument that the Delince check scheme was not related to the RICO enterprise would not prevail at trial. See Schwamborn § 2255 Pet. ¶¶ 8-9, 19. The Court therefore determines that it is not in the interest of justice to transfer Mr.

---

[21] See also id. at 2 (citing Strickland v. Washington, 466 U.S. 668 (1984), and apparently arguing that Mr. Washor's advising Mr. Schwamborn to plead guilty to the RICO charges satisfies the Strickland test for ineffective assistance).

Schwamborn's belated ineffective assistance claim to the Second Circuit.[22]  See Mallet v.

Miller, 442 F. Supp. 2d 156, 157 (S.D.N.Y. 2006) (declining to transfer a second or

successive § 2255 petition to the Second Circuit because "the petition is entirely without

merit.").  The Court shall therefore apply a Rule 60(b) analysis only to the argument

regarding the sufficiency of the evidence underlying the RICO conviction that was raised

in Mr. Schwamborn's original § 2255 petition.

2.    *Application of Rule 60(b) to Insufficiency of Evidence Claim*

Rule 60(b) provides that:

> On motion and upon such terms as are just, the court may relieve a party or
> a party's legal representative from a final judgment, order, or proceeding for
> the following reasons: (1) mistake, inadvertence, surprise, or excusable
> neglect; (2) newly discovered evidence which by due diligence could not have
> been discovered in time to move for a new trial under Rule 59(b); (3) fraud
> (whether heretofore denominated intrinsic or extrinsic), misrepresentation,
> or other misconduct of an adverse party; (4) the judgment is void; (5) the
> judgment has been satisfied, released, or discharged, or a prior judgment
> upon which it is based has been reversed or otherwise vacated, or it is no
> longer equitable that the judgment should have prospective application; or
> (6) any other reason justifying relief from the operation of the judgment.

Rule 60(b)(1) "affords a party relief from a material mistake that changed the outcome

of the court's judgment," Matura v. United States, 189 F.R.D. 86, 89 (S.D.N.Y. 1999),

and permits a district court to alter or amend an otherwise final judgment on the basis

of, inter alia, the court's own mistake of fact or of law in rendering the initial judgment.

See In re 310 Assocs., 346 F.3d 31 (2d Cir. 2003); Cappillino v. Hyde Park Cent. Sch.

---

[22]    Alternatively, the Court may "deny the motion as beyond the scope of Rule 60(b)."
Hammie, 2005 WL 3543768, at *1 (citing Harris v. United States, 367 F.3d 74, 82 (2d Cir. 2004); Gitten v.
United States, 311 F.3d 529, 534 (2d Cir. 2002).  There is no practical distinction of which the Court is
aware between declining to transfer a second or successive Section 2255 petition that is contained within a
Rule 60(b) motion to the appellate court and denying the motion as outside the scope of Rule 60(b), and
for whatever purposes such a distinction might be relevant, this order should be construed as resting on
both grounds.

Dist., 135 F.3d 264 (2d Cir.1997). Although the Court has found no case directly on point, the Court's failure to address Mr. Schwamborn's argument that the Government's evidence failed to establish his guilt as to the RICO charges, which was properly before the Court when it addressed Mr. Schwamborn's other arguments in the June 20 Order, would seem to be precisely the sort of omission that constitutes a "mistake" or an act of "inadvertence" for which remedy may be sought under Rule 60(b)(1). While other courts have recognized that the mere "repetition of arguments previously before the Court, which were given the full weight of consideration in the previous opinions, fails to constitute a genuine ground for relief pursuant to Rule 60(b)," the situation presented here is distinguishable in that, although the argument regarding the Delince check scheme's status as a RICO predicate was before this Court at the time the June 20 Order was issued, the Court neglected to address it. Hackensack Cars, Inc. v. Lifestyle Limousine Service Corp., No. 87-CV-2764, 1994 WL 38989, at *2 (S.D.N.Y. Feb. 9, 1994). For that reason, Mr. Schwamborn's motion under Rule 60(b) is granted to the extent necessary to permit the Court to address that argument. Reviewing the merits of Mr. Schwamborn's argument regarding the Delince check scheme, however, it is clear that this argument must be rejected and the § 2255 petition denied.

As an initial matter, it appears that Mr. Schwamborn has procedurally defaulted on this issue by failing to raise it on direct appeal. As a "general rule[,] claims not raised on direct appeal cannot be raised on collateral review unless the petitioner shows cause and prejudice" for failing to raise the issue on appeal. Massaro v. United States, 538 U.S. 500, 504 (2003); see also Bousley v. United States, 523 U.S. 614, 622 (1998) ("In failing to [raise the claim presented in the petitioner's § 2255 petition on direct appeal],

petitioner procedurally defaulted on the claim he now presses on us."); Sapia v. United States, 433 F.3d 212, 217 (2d Cir. 2005) ("Because a motion under § 2255 is not a substitute for direct appeal, Sapia has procedurally forfeited his [§ 2255] claim. . . unless he can show '(1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence.'") (quoting Rosario v. United States, 164 F.3d 729, 732 (2d Cir.1998)). "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Massaro, 538 U.S. at 504. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley, 523 U.S. at 622 (citations omitted).

The record of Mr. Schwamborn's appeal reflects that he failed to raise the issue of the sufficiency of the evidence before the Second Circuit, which he now seeks to present to this Court. Mr. Schwamborn's appellate brief raised three arguments: first, that Mr. Washor's physical condition– specifically, the arm infection from which Mr. Washor was suffering at the time of the plea– as well as the nature of the discussion between Schwamborn and Washor regarding the Government's plea offer– a twenty-minute conversation between Mr. Washor and Mr. Schwamborn in the courthouse's "lock-up" area– rendered Mr. Washor's assistance with respect to the plea ineffective and Mr. Schwamborn's plea not voluntary or intelligent; second, that this Court erred in applying a four-level enhancement to Mr. Schwamborn's offense level for his role as an organizer or leader in the criminal enterprise pursuant to U.S.S.G. § 3B1.1; and third,

that Mr. Schwamborn should have received a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 because he was willing to accept the plea agreement allegedly offered by the Government, but was unable to do so because the Government conditioned that agreement on a global plea including Schwamborn, Grossman, and Santoro.  United States v. Schwamborn, No. 03-1370, Brief for Defendant-Appellant (2d Cir. filed Sept. 23, 2003).  It makes no mention of the sufficiency of the Government's evidence on the RICO counts.  Mr. Schwamborn has therefore procedurally defaulted on this issue and is barred from raising it in this action unless some equitable exception to the procedural-default rule is found to apply.

Although Mr. Schwamborn's § 2255 petition and his Rule 60(b) motion appear to conflate the concept of actual innocence– which is an equitable exception to the procedural default rule– with the merits of his collateral attack on his conviction, the Court shall apply the "liberal standard of interpretation" to which pro se pleadings are entitled and assume that Mr. Schwamborn's § 2255 petition is intended to argue that his procedural default should be excused because he has established "actual innocence" of the RICO violations to which he pleaded guilty.  Chang v. United States, 250 F.3d 79, 86 n. 2 (2d Cir. 2001).  Even under the most favorable reading, however, Mr. Schwamborn's § 2255 petition fails to raise even a hint of an actual innocence claim. "The doctrine of actual innocence was developed to mitigate the potential harshness of the judicial limitations placed on a petitioner's ability to file successive or otherwise procedurally defaulted habeas petitions in the federal courts," Doe v. Menefee, 391 F.3d 147, 160 (2d Cir. 2004), and "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence– whether it be exculpatory scientific

23

evidence, trustworthy eyewitness accounts, or critical physical evidence– that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995); see also Doe, 391 F.3d at 161 (citing Schlup). Mr. Schwamborn's petition presents no new evidence whatsoever– much less "reliable" evidence– that was not considered by this Court in convicting and imposing sentence upon him. He simply reiterates a legal argument that he and his attorney had contemplated presenting at trial prior to Mr. Schwamborn's decision to plead guilty. Mr. Schwamborn has therefore failed to establish even an arguable claim of actual innocence. See Doe, 391 F.3d at 172 (petitioner failed to establish actual innocence "because [he] has not presented any new reliable evidence. . . ."). He also fails to present any other "cause" or "prejudice" that might warrant excusing his failure to present this argument to the appellate court. Because he failed to raise this argument on appeal and has likewise failed to establish any equitable excuse for that procedural default, Mr. Schwamborn is barred from asserting the Government's alleged failure to establish the element of relatedness as a basis for collaterally attacking his conviction or sentence in this action.

Moreover, even if Mr. Schwamborn had not procedurally defaulted on this argument, the Court would have no hesitation in denying his petition on the merits. Though cloaked in the language of an equitable exception to the procedural default rule, Mr. Schwamborn's argument regarding the Delince check scheme is actually nothing more than an effort to rescind his guilty plea and to litigate factual issues about the charges alleged in the Superseding Indictment– a right that Mr. Schwamborn waived when he voluntarily and intelligently pleaded guilty to those charges. Similar efforts by defendants to evade the consequences of their guilty pleas have been repeatedly rejected

by the Second Circuit.  For example, in <u>United States v. Maher</u>, 108 F.3d 1513 (2d Cir. 1997), two defendants, having pleaded guilty in the Southern District of New York to money laundering and conspiracy to commit money laundering, sought to vacate their convictions on appeal, arguing, <u>inter alia</u>, that no factual basis existed for their guilty pleas and that the evidence presented by the Government during the two weeks of trial prior to the entry of those pleas was insufficient to establish the defendants' guilt because the government allegedly failed to introduce evidence that the defendants were aware that the funds at issue were proceeds of illegal activity.  The Second Circuit affirmed the defendants' convictions, holding that a factual basis for the defendants' pleas was established by the evidence presented at trial in conjunction with the admissions made by the defendants in their plea allocutions, and that the defendants' voluntary and intelligent guilty pleas foreclosed their right to challenge the sufficiency of the evidence.  The <u>Maher</u> court observed that the defendants' arguments that the evidence presented by the government failed to establish that they knew the funds at issue were the proceeds of unlawful activity "could have been made to the jury if defendants had not pleaded guilty. . . [but i]nsofar as this appeal is concerned, [the arguments] have been waived, for a defendant who pleads guilty unconditionally admits his guilt and waives his right to appeal all nonjurisdictional contentions."  <u>Id.</u> at 1528.[23]

---

[23]     As this Court noted in its June 20 Order, "'[i]t is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction.'"  492 F. Supp. 2d at 166 (quoting <u>Hayle v. United States</u>, 815 F.2d 879, 881 (2d Cir. 1987) (citations omitted); citing <u>United States v. Doyle</u>, 348 F.2d 715, 718-19 (2d Cir. 1965) (Friendly, J.) ("An unqualified plea of guilty, legitimately obtained and still in force, bars further consideration of all but the most fundamental premises for the conviction, of which the subject-matter jurisdiction of the court is the familiar example.")).

The same reasoning preempts the argument presented here. By pleading guilty to the Superseding Indictment, Mr. Schwamborn admitted every element of the charges against him– including the element of relatedness– and waived his right to subsequently argue on appeal or in a collateral proceeding that the Government's evidence was factually insufficient to sustain a conviction. Moreover, even if Mr. Schwamborn had not waived his right to challenge the sufficiency of the evidence, the Court could rely on his admission at his plea allocution, which is entitled to a "strong presumption of verity," that the Delince check scheme was related to the criminal enterprise alleged in the Superseding Indictment as conclusive evidence as to that element. Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Salas, 139 F.3d 322, 324-25 (2d Cir. 1998); United States v. Simmons, 164 F.3d 76, 79 (2d Cir. 1998) (citing Salas); United States v. Salim, 250 F. Supp. 2d 250, 301 (S.D.N.Y. 2003). At his allocution, Mr. Schwamborn specifically admitted that the predicate acts with which he was charged were related to the racketeering enterprise alleged in the Superseding Indictment.[24] That admission provided the requisite factual basis for Mr. Schwamborn's plea and effectively waived his right to challenge the sufficiency of the Government's evidence as to the relatedness element of the RICO charges. Like the defendants in Maher, Mr. Schwamborn's argument that he is not guilty of the RICO charges because the Delince check scheme was not related to the Genovese crime family is one that "could have been made to the jury if [Schwamborn] had not pleaded guilty,"

---

[24]    See United States v. Schwamborn, 01-CR-416, Sentencing Tr. 20-21 (E.D.N.Y. Nov. 15, 2002) ("Q. And this pattern of racketeering activity had some relationship to this enterprise that you were a member of; in other words, the mail fraud, the wire fraud, the money laundering, the interstate transportation of stolen property, was connected with the affairs of the enterprise, was related to it? A. Yes, your Honor.").

but having done so, that factual argument is now waived.  <u>Maher</u>, 108 F.3d at 1528.

Accordingly, Mr. Schwamborn's § 2255 petition must be denied.

3.     *Certificate of Appealability*

Mr. Schwamborn also requests that the Court grant a certificate of appealability as to the June 20 Order.  Under 28 U.S.C. § 2553(c)(2), a certificate of appealability may be granted "only if the applicant has made a substantial showing of the denial of a constitutional right."  Where a district court's denial of a § 2255 petition rests on a substantive evaluation of the merits of the petitioner's claims, the "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" in order to be entitled to a certificate of appealability.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484.  However, when the district court's denial of the petition rests of procedural grounds, "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Id.</u>; <u>see also</u> <u>Moshier v. United States</u>,.402 F.3d 116, 117-18 (2d Cir. 2005) (citing <u>Slack</u>).  In this case, the Court's rejection of the arguments raised in Mr. Schwamborn's § 2255 petition are based on a combination of substantive and procedural grounds, the Court will apply the former standard to its analysis of the substantive merits of Mr. Schwamborn's petition, and the latter standard to the procedural analysis.  Under either standard, however, Mr. Schwamborn has failed to demonstrate "a substantial showing of the denial of a constitutional right," and the Court does not find its analysis of any aspect of the June 20 Order or this order to be

particularly controversial or debatable among jurists of reason.  Mr. Schwamborn's request for a certificate of appealability as to the June 20 Order and as to this order is therefore denied.

## **CONCLUSION**

For the reasons stated above, Mr. Schwamborn's Rule 60(b) motion to reconsider this Court's June 20 Order is GRANTED insofar as is necessary to address the argument, raised in his original § 2255 petition, that he is not guilty of the RICO offenses of which he was convicted because the Delince check scheme was not related to the alleged RICO enterprise.  However, Mr. Schwamborn's petition is DENIED on the merits of that argument.  Mr. Schwamborn's request for a certificate of appealability as to the June 20 Order is also DENIED.

SO ORDERED.

Dated:      September 5, 2007
               Brooklyn, New York

_____/s/_____
I. Leo Glasser
United States District Judge

On this day, copies of the foregoing were mailed to:

<u>Counsel for the Plaintiff</u>

Frank Schwamborn, Plaintiff *pro se*
CC#0600 4605
LOC. E2E-21
100 Carmen Avenue
East Meadow, NY 11554-1146

<u>Counsel for the Defendant</u>

Paul Weinstein, Esq.
Assistant United States Attorney
147 Pierpont St.
Brooklyn, NY 11201
(Via ECF)